BDM:JMK/JPL
F.#2013R00758

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

14 - 525 M

– – – – – – – – – – – – – – – – – X

In re the Seizure of:

ONE 2005 TAN HUMMER SPORT
UTILITY VEHICLE BEARING
VEHICLE IDENTIFICATION
NUMBER 5GRGN23U25H101672

– – – – – – – – – – – – – – – – – X

FILED UNDER SEAL

AFFIDAVIT IN SUPPORT OF
SEIZURE WARRANT AND
WRIT OF ASSISTANCE

Case No.

EASTERN DISTRICT OF NEW YORK, SS:

FRANK LOMONACO, being duly sworn, deposes and states as follows:

1.      I am a Special Agent with the Federal Bureau of Investigation ("FBI").

I have been employed by the FBI for approximately 9 years.  During that time, I have

personally participated in numerous investigations involving search, seizure and arrest

warrants related to various types of financial crime and fraud.  Among other federal crimes, I

have investigated offenses involving securities fraud, mail and wire fraud, mortgage fraud,

health care fraud, and public corruption.  As a result of my training and experience, I am

familiar with the techniques and methods of operation used by individuals involved in

criminal activity to conceal their activities, together with the proceeds of those activities,

from detection by law enforcement authorities.

2.      This affidavit is made in support of an application for a seizure warrant

for one 2005 Tan Hummer Sport Utility Vehicle bearing Vehicle Identification Number

5GRGN23U25H101672 (the "Target Vehicle").

3.      The facts and information in this affidavit are based upon my personal knowledge, the observations of other law enforcement personnel involved in this investigation, and the review of bank and other financial records.

4.      As this affidavit is only submitted in support of an application to seize the Target Vehicle, it does not include each and every fact and matter observed by me or known to the government about the investigation.

<u>STATUTORY FRAMEWORK</u>

5.      Title 15, United States Code, Section 78j(b) prohibits any person from using any manipulative or deceptive devices and contrivances, contrary to the rules and regulations of the Securities and Exchange Commission (the "SEC"), including but not limited to Rule 10b-5 of the Rules and Regulations, Section 240.10b-5, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, or any securities-based swap agreement.

6.      Title 18, United States Code, Section 981(a)(1)(C) provides for the forfeiture of any property, real or personal, which constitutes or is derived from proceeds traceable to a violation of Title 15, United States Code, Section 78j(b).

7.      As discussed below, the government's investigation has revealed that the Target Vehicle represents property constituting or is derived from proceeds traceable to a violation of Title 15, United States Code, Section 78j(b).

8.      This Court is empowered to issue a seizure warrant for any property subject to forfeiture pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f).

JAMES M. PEISTER AND RELEVANT ENTITIES

9.     James M. Peister ("Peister") was a fund manager who resided in St. James, New York.

10.     Peister was the President, Director, Secretary and Treasurer of Northstar International Group Inc. ("Northstar"), a Nevada corporation with its principal place of business in Oceanside, New York.

11.     Peister was also the President, Director, Secretary and Treasurer of North American Globex Group ("Globex Group"), a company with its principal place of business in Oceanside, New York.  Peister controlled the bank accounts and trading accounts on behalf of the Globex Group.

12.     In or about 2000, Peister formed North American Globex Fund, LP ("Globex Fund").  Northstar was the General Partner of the Globex Fund.  As the General Partner, Northstar exercised full and exclusive control over the management, conduct and trading of the Globex Fund.  Because Peister exclusively controlled Northstar, Peister exclusively controlled the Globex Fund.  In exercising his right to control the Globex Fund, Peister transferred a substantial portion of the Globex Fund's assets to accounts in the name of the Globex Group.

THE FRAUDULENT SCHEME

A.     Solicitation of Limited Partners

13.     In or about January 2000 to January 2009, Peister, though marketing materials and other disclosures, solicited investors ("Limited Partners") to purchase limited partnership interests in the Globex Fund.  According to marketing materials disseminated by

Peister, the Globex Fund "was formed to pool investment assets for the purpose of trading financial instruments." The Globex Fund purportedly invested in domestic and foreign securities, including equities, futures and fixed income instruments, to generate significant investment returns while minimizing risk. Its purported target net annual return rate was 15% to 20%. Based on these representations, among others, Peister successfully solicited approximately $17.9 million in investments in the Globex Fund from approximately 74 Limited Partners.

      B.    <u>Use of the Limited Partners' Investments in the Globex Fund</u>

      14.    Contrary to his representations, Peister used new investments made by Limited Partners to pay other Limited Partners' requests for redemptions of their interests in the Globex Fund. Additionally, Peister improperly transferred portions of Limited Partners' investments to Northstar to pay business and personal expenses.

      15.    Peister also transferred substantial portions of the Limited Partners' investments to accounts held in the name of the Globex Group. From those accounts, Peister improperly paid additional business and personal expenses, and invested the remaining money into brokerage accounts in which substantial trading losses occurred.

      16.    In total, the defendant improperly used approximately $1.5 million of the Limited Partners' investments in the Globex Fund to pay business and personal expenses, including payments on a personal residence and the Target Vehicle.

      C.    <u>Misrepresentations About the Use of the Limited Partners' Investments</u>

      17.    To conceal his improper use of the Limited Partners' investments, Peister misrepresented the value of, and the return on, the assets in the Globex Fund to the

Limited Partners and the Globex Fund's auditor, among others.  For example, in monthly statements issued to the Limited Partners, Peister significantly overstated the actual values of their respective partnership interests.

18.     Additionally, Peister provided the Globex Fund's auditor with false information about the value of the Globex Fund's assets.  Specifically, while Peister provided accurate financial statements for accounts held in the name of the Globex Fund, he provided financial statements relating to the Globex Group that grossly overstated the assets held in the Globex Group's accounts, without providing supporting documentation.  Because the Globex Fund's auditor incorporated Peister's false financial statements relating to the Globex Group into the audit of the Globex Fund, the Globex Fund's audits grossly overstated the Globex Fund's assets, including the values of the Limited Partners' interests.

19.     For example, in the Globex Fund's audit for 2006, the last year for which a completed audit was issued, the total assets of the Globex Fund were purportedly valued at approximately $14.8 million, with approximately $13.2 million of those assets held in accounts in the name of the Globex Group.  In reality, only $77,000 was held in accounts in the name of the Globex Group.

D.     Redemption Requests Delayed and Denied

20.     In or about February 2007, Peister began delaying payment of Limited Partners' redemption requests.  Nonetheless, Peister continued to solicit new investors in the Globex Fund.  Upon receiving a new Limited Partner's investment, Peister utilized substantial portions of that investment to pay outstanding redemption requests.

21.     Amid the turmoil in the financial markets in 2008, the Limited Partners began to pressure Peister about the performance of the Globex Fund.  Until approximately June 2009, Peister made material misrepresentations and omissions to the Limited Partners about the stability and performance of the Globex Fund to prevent them from making additional redemption requests.  Peister also made material misrepresentations and omissions to the Limited Partners who had pending redemption requests about the true nature of his inability to pay those redemptions.

THE CITIBANK ACCOUNT

22.     Citibank account number 500078274 (the "Citibank Account") was opened on or about December 24, 1999, and is a business checking account held in the name of the Globex Group.  Peister is the sole signatory on the Citibank Account.

23.     Bank records reflect that during the period between in or about May 2002 and July 2004, approximately $4,397,000 was transferred to the Citibank Account from Bank of America checking account number 4961864530 held in the name of the Globex Fund (the "BoA Account").  Included among these transfers was a $200,000 transfer from the BoA Account to the Citibank Account on or about July 2, 2004 (the "Subject Transfer").

THE TARGET VEHICLE

24.     Approximately six days after the Subject Transfer, on or about July 8, 2004, the Target Vehicle was purchased by Peister from Sun Pontiac-GMC Truck located at 3333 Sunrise Highway, Wantagh, New York ("Sun Pontiac").  The Target Vehicle was paid for, in part, via (i) wire transfer number 1880004482 initiated on or about July 6, 2004 in the amount of approximately $20,433.21 from the Citibank Account to a bank account held in

6

the name of Sun Pontiac; (ii) check number 4082 drawn on the Citibank Account on or about July 6, 2004 in the amount of approximately $500, which was made payable to the order of Sun Pontiac for "05 Hummer" and signed by Peister; and (iii) automated clearing house transfer number 4084 initiated on or about July 12, 2004 from the Citibank Account to Sun Pontiac in the amount of approximately $153.25.

      25.    According to accounting records from the Globex Group, subsequent payments were made to Sun Pontiac using two Globex Group credit cards, a Citi Platinum card and a Diners Club card, as follows:

| Credit Card | Date of Payment | Amount of Payment |
|---|---|---|
| Citi Platinum | July 8, 2004 | $216.41 |
| Citi Platinum | July 8, 2004 | $216.41[1] |
| Citi Platinum | February 2, 2005 | $65.20 |
| Citi Platinum | July 7, 2005 | $123.95 |
| Citi Platinum | January 23, 2006 | $65.12 |
| Diners Club | August 9, 2006 | $368.71 |
| Diners Club | August 9, 2006 | $500.00 |
| Diners Club | August 9, 2006 | $500.00[2] |
| Diners Club | December 7, 2006 | $65.12 |

Bank and accounting records reflect that, during the period set forth in the chart above, balances for the both the Citi Platinum credit card and Diners Club credit card were paid from the Citibank Account.

---

[1]    According to the Globex Group's accounting records, two payments were made to Sun Pontiac on or about July 8, 2004 in the amount of approximately $216.41.

[2]    According to the Globex Group's accounting records, three payments were made to Sun Pontiac on or about August 9, 2006; two in the amount of approximately $500 and the third in the amount of approximately $368.71.

26.     A search of New York State Department of Motor Vehicles database records conducted in or about May 2014 revealed that title to the Target Vehicle is held in the name of the Globex Group, located at 2901 Long Beach Road, Long Beach, New York, which is an address used jointly by Northstar, the Globex Group, and the Globex Fund. Records further reflect that the Target Vehicle is registered to Peister at P.O. Box 624, Stony Brook, New York.

## THE INDICTMENT

27.     On or about June 5, 2014, a grand jury empanelled in the Eastern District of New York returned an indictment charging Peister with securities fraud in violation of Title 15, United States Code, Section 78j(b), and related mail and wire fraud offenses.

## CONCLUSION

28.     Based upon the foregoing investigation, the Target Vehicle represents property traceable to proceeds of securities fraud in violation of Title 15, United States Code, Section 78j(b).

29.     As a result, there is probable cause to believe that the Target Vehicle is subject to forfeiture pursuant to Title 18, United States Code, Section 981(a)(1)(C).

30.     A restraining order, pursuant to 21 U.S.C. § 853(e), will not be sufficient to preserve the asset in question given the ease with which the Target Vehicle may be moved or transported.

31.     Accordingly, I respectfully request that the Court issue a seizure warrant for the Target Vehicle pursuant to 18 U.S.C. § 981(b) and 21 U.S.C. § 853(f).

32.     Because the Target Vehicle may be located on private property, I further respectfully request permission for the government to enter onto such private property for the purpose of effectuating the seizure of the Target Vehicle.

33.     Because this Affidavit is submitted in connection with an ongoing investigation that would be jeopardized by premature disclosure of information, I request that this Affidavit and all related documents be filed under seal until further order of the Court, except that copies of the seizure warrant may be served at the time it is executed, and that the government may provide copies of the warrant and this Affidavit as required by its discovery obligations, including Rule 16 of the Federal Rules of Criminal Procedure.

S/ Frank Lomonaco

_____
FRANK LOMONACO
Special Agent
Federal Bureau of Investigation

Sworn to before me this
5th day of June, 2014

S/ James Orenstein
_____
THE HONORABLE JAMES ORENSTEIN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK